## CENTRAL OF GEORGIA RAILWAY CO. *v.* STANCEL.

There being no error in charge of the court respecting the measure of damages, nor any erroneous ruling save that the plaintiff was competent to express his opinion, as a non-expert witness, that his injuries were of a permanent nature, the verdict of the jury should be allowed to stand, since it was not only fully warranted by the evidence but was quite moderate in amount.

Argued May 1, — Decided June 1, 1903.

Action for damages.    Before Judge Nottingham.    City court of Macon.    December 11, 1902.

*Hall & Wimberly* and *J. E. Hall*, for plaintiff in error.
*F. Chambers & Son*, contra.

SIMMONS, C. J.    An action for damages was brought by Stancel against the Central of Georgia Railway Company, because of injuries alleged to have been sustained by him while riding as a passenger on a train which collided with another train belonging to the defendant company.    The contention upon which it mainly relied at the trial was that the plaintiff sustained only a few slight bruises as a result of the collision, and that the ailments of which he complained were brought about, not by the slight injuries he received at that time, but by the infirmities of old age or other independent causes for which the company was not responsible.    The plaintiff, on the other hand, insisted that the injuries received by him while riding on the defendant's train were of a serious and permanent character and had incapacitated him from performing labor of any kind.    There was an irreconcilable conflict in the evidence touching this issue of fact, which was decided by the jury in favor of the plaintiff.    The company made a motion for a new trial, based on divers grounds; but its motion was overruled, and it excepted. Complaint was therein made of certain instructions to the jury with regard to the measure of damages to be allowed the plaintiff in the event they should find he was entitled to recover, the criticism made upon these instructions being that they practically left the jury free to assess whatever amount of damages they might think proper, irrespective of whether the plaintiff had successfully established his contention that he had been permanently injured.    This criticism is not well founded; for the instructions complained of, when considered in connection with the whole charge given the

jury on the subject of damages, were clear and explicit, and in no way misleading.

It appears that the plaintiff introduced in evidence the North-ampton, the Carlisle, and the Actuaries'- mortality tables, as well as the annuity table appearing in Reese's Manual, copies of which tables are published in the appendix to the 70th volume of the *Georgia Reports*, pp. 844–847. The trial judge explained to the jury how this annuity table could be used in conjunction with the Carlisle .mortality table, but in so doing made no mention of the other mortality tables. In the company's motion for a new trial error is assigned upon the charge of the court in this connection, the company contending that the charge was erroneous, " because it singled out one piece of evidence for the basis of the charge, and gave no instruction as to the other evidence of the same class." The obvious reply to this contention is that the annuity table above mentioned was prepared with a view to showing the value of an-nuities on single lives according to the Carlisle table only, and can not properly be used in conjunction with either of the other mor-tality tables, since each furnishes calculations concerning the ex-pectancy of life of average men of different ages wholly at vari-ance with the calculations set forth in the Carlisle table.

A physician who was sworn as a witness in behalf of the plain-tiff testified: " From the examination I have given this man, I would say the disease he has now is what is called traumatic neurosis. . . Neurosis is a suspended condition of the nervous system. It is like nervous prostration. By 'traumatic' is meant that this condition is attributed to some accident, physical violence or shock. Neurosis is a thing that frequently exists from a num-ber of causes other than shock; so that in determining whether a thing is traumatic neurosis or not, you must have regard to its his-tory. The symptoms are similiar whether it be from shock and violence or from disease." On cross-examination of this witness, the defendant company elicited from him the statement that " any-thing that would keep the matter [an injury] before a man's mind, like the matter of attending court or keeping his injury before him for the purpose of trial, retards recovery; and frequently, when that is removed, recovery is very rapid." Counsel for the plaintiff, on redirect examination of the witness, asked him the following ques-tion: " Do you think his condition of mind is what produces the

disease, or the physical injury?" The witness answered: "I think it is both." Plaintiff's counsel then asked: "Isn't that condition of mind superinduced by the physical injury?" To this latter question defendant's counsel objected on the ground that the answer solicited was a matter to be passed on by the jury; but the objection was overruled by the court, and the witness was permitted to testify: "The rule is with this condition, and I think with this man, the shock he has sustained has caused him to a certain extent to be afraid of what might happen to him, together with the injury he did sustain. In my opinion, this condition of mind was caused by the accident." Exception is taken to the ruling of the court just stated. We think the question propounded to the witness was entirely legitimate and proper. He was introduced as an expert whose opinion, because of his professional knowledge and experience, was entitled to much weight; had testified that he had made a careful and painstaking examination of the plaintiff and found him to be suffering from a disease technically known as "neurosis;" counsel for the defendant had been permitted to elicit from the witness a statement to the effect that the bringing of a suit for damages by one suffering from that disease was calculated, because of the worry and anxiety incident to attending court and prosecuting his claim, to retard his recovery; and the witness had further testified, in substance, that the condition of the plaintiff's mind, as well as the physical injury sustained by him, brought about and produced the disease from which he was then suffering. Whether or not "that condition of mind [was] superinduced by the physical injury" was an all-important matter to be inquired into and determined by the jury. The witness had, he testified, taken particular note of the character and extent of the physical injuries the plaintiff had received; and we have no hesitation in holding that it was perfectly competent for this witness to give his opinion, as a medical expert, that the plaintiff's "condition of mind was caused by the accident." This really amounted to no more than the expression of an opinion that the physical injuries received were of a character sufficiently grave to produce an unhealthy mental condition which was, in part, the cause of the plaintiff's nervous affection.

In another ground of the motion for a new trial the following complaint is set forth: "After the plaintiff, William Stancel, had

testified to his injury in his head, shoulder, back, and legs, counsel for the plaintiff asked the following question : ' State to the jury whether or not these injuries you have spoken of are permanent in their nature,'—to which question counsel for the defendant objected on the ground that the answer sought was a medical or expert opinion, and as the plaintiff was not a medical expert, he could not properly give a medical opinion. Over defendant's said objection, plaintiff was allowed to testify as follows : ' I hope that my back will get well, but I don't believe it will ever get well. I think it is ruined. I lost the use of this arm,' etc." As was expressly ruled in *Atlanta Street R. Co.* v. *Walker*, 93 *Ga.* 462 : " It is not competent for a party who, as a witness, testifies to his feelings, pains, and symptoms, to state his opinion that the injuries which caused the same are permanent." The judgment in that case was reversed, it appearing that the trial court had not only allowed the plaintiff to testify to his opinion that his injuries were of a permanent character, but had also improperly permitted the plaintiff's wife to testify to self-serving declarations he had made to her as to the extent and cause of the suffering he claimed he was at the time undergoing. The gravity of the error committed in thus allowing the wife to attempt to bolster up her husband's testimony by swearing, in effect, that he had been consistent, in that he had prior to the trial told the same story he had related from the witness stand, was certainly not to be underestimated ; and accordingly the conclusion was announced (p. 467) that " the two errors in admitting evidence " referred to called for a new trial. So far as the present case is concerned, however, we are of the opinion that, as the sole error committed on the trial was in allowing the plaintiff to testify as above set forth, a judgment of affirmance should be rendered. The physician who appeared as a witness in his behalf testified, as a medical expert, that the injuries he had received would doubtless prove permanent, and that he would in any event continue for some time in the future to suffer pain. The jury apparently took the view that he would eventually recover, for they awarded him only $1,-625 as damages, which amount was, in view of the testimony concerning the plaintiff's earning capacity prior to his injury, quite moderate indeed, regarded merely as an award for actual loss of income, with no allowance whatever for past or future suffering.

*Judgment affirmed. By five Justices.*